# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2021-0085, Appeal of Suzanne Fournier & a., the court on April 22, 2022, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The appellants, Suzanne Fournier and Rae-Ann Melancon, appeal an order of the New Hampshire Water Council (Water Council) upholding the issuance of an alteration of terrain (AoT) permit by the New Hampshire Department of Environmental Services, Alteration of Terrain Bureau (DES) to the intervenor, Leighton A. White, Inc., to conduct a gravel mining operation on privately-owned land in Milford. We affirm.

This appeal is the second appeal filed by Ms. Fournier related to the issuance of an AoT permit for a gravel mining operation in Milford. See Appeal of Fournier, Case No. 2018-0617, 2019 WL 6040519, at *1 (N.H. Nov. 14, 2019). The first appeal concerned a proposed gravel mining operation on the Brox Community Lands, a property owned by the Town of Milford. Id. The Town-owned property is a known habitat for the eastern hog-nosed snake, Blanding's turtle, and the spotted turtle, which are species identified by the New Hampshire Fish and Game Department (Fish & Game) as either threatened or endangered. See id.

The primary issue in Appeal of Fournier concerned New Hampshire Administrative Rule, Env-Wq 1503.19(h), which, at all times relevant to Appeal of Fournier and the instant appeal, provided that DES "shall not issue [a] permit unless the applicant demonstrates that . . . [t]he project has been designed in a manner that will not result in adverse impacts to state- or federally-listed threatened or endangered species." Appeal of Fournier, 2019 WL 6040519, at *1 (quotation and emphasis omitted). In Appeal of Fournier, we reversed on the ground that DES had applied an incorrect legal standard by issuing a permit "for a project designed to minimize adverse impacts" on endangered or threatened species, instead of issuing a permit for a project designed to "prevent" such impacts. Id. at *1, *5. We rejected DES' argument that the more demanding "no adverse impact" standard could never be satisfied if threatened or endangered species were present, noting evidence that "when . . . studies take place before implementation of a project, it is possible . . . to design around the threatened or endangered species' use of the property." Id. at *4 (quotation omitted). Justice Hantz Marconi concurred in the result, explaining that she would have reversed on the ground that the evidence was

insufficient to meet either the "no adverse impact" or "minimal adverse impact" standard because there were no "studies conducted prior to the issuance of the permit." Id. at *5.

The land at issue in the instant appeal is near the Town-owned land at issue in Appeal of Fournier. The AoT permit in this case was issued in June 2018. In July 2018, the appellants appealed to the Water Council. The appellants asserted that DES had unlawfully issued the AoT permit because: (1) "[r]ather than incorporate enforceable conditions in its permit to protect threatened [or] endangered species, DES only included terms that are optional recommendations"; (2) absent a pre-permit study of the site, "DES had no information about how to design a project on this property in a manner that does not result in adverse effects on the threatened [or] endangered species . . . known to be present there"; and (3) DES applied the wrong legal standard when deciding to issue the AoT permit.

In a January 2020 decision, the Water Council agreed with the appellants' first argument and remanded so that DES could rewrite the recommendations by Fish & Game "in language that is mandatory and enforceable." The Water Council rejected the appellants' second argument, finding that a pre-permit study was unnecessary prior to DES approval of the project because Fish & Game "and DES already possessed a substantial amount of knowledge pertaining to [threatened or endangered species] inhabiting the site and other nearby parcels." The Water Council also rejected the appellants' third claim, finding that instead of "authorizing the design of a project that 'minimizes' adverse impacts to [threatened or endangered species], the permit . . . is conditioned on a design that contains DES 'Proposed Operations To Avoid Take Of Endangered Species'" and incorporates "'Additional [Fish & Game] Recommendations/Conditions.'"

The appellants subsequently moved for rehearing only on the pre-permit study issue, arguing that the Water Council had erroneously concluded that such study was unnecessary. The Water Council granted the appellants' motion, agreeing to rehear only "whether DES had sufficient evidence in the record" to support its determination that issuing the permit complied with Rule 1503.19(h). On rehearing, the Water Council determined that the appellants had failed to establish that there was insufficient evidence to support DES' determination. This appeal followed.

RSA chapter 541 governs our review of Water Council decisions. See RSA 21-O:14, III (2020). We will not set aside the Water Council's decision "except for errors of law," unless we are "satisfied, by a clear preponderance of the evidence before us, that such order is unjust or unreasonable." RSA 541:13 (2021). As the appealing parties, the appellants have the burden of proving that the order "is clearly unreasonable or unlawful." Id.

2

The Water Council's factual findings on all issues properly before it are deemed prima facie lawful and reasonable. See id. In reviewing those findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record. Appeal of Town of Lincoln, 172 N.H. 244, 247 (2019). We review the Water Council's rulings on questions of law de novo. Id.

On appeal, the appellants first argue that when DES issued the AoT permit, pre-permit studies were "always required as a matter of law." They cite no binding authority for this proposition. Nor are we aware of any. Contrary to the appellants' assumption, the concurrence in Appeal of Fournier does not stand for that proposition and, even if it did, does not constitute binding authority and is based upon a different set of facts.

The appellants next assert that DES "presumably" issued the permit using the same incorrect legal standard that it applied in Appeal of Fournier. The appellants argue that, as in Appeal of Fournier, DES issued a permit to a project that was apparently designed merely to "minimize" adverse impacts on threatened or endangered species. However, there is evidence in the record to support a finding that DES applied the correct legal standard.

In May 2018, DES sent an email to Fish & Game stating, "As you know, under our rules we must determine whether an applicant for an AoT permit has demonstrated that the project has been designed in a manner that will not result in adverse impacts to state- or federally-listed threatened or endangered species . . . ." (Quotation omitted.) At the hearing, the author of the email confirmed that DES had determined that the intervenor had "designed [the] project in a manner that . . . will not result in an adverse impact [on] the threatened [or] endangered species" in the area. Moreover, as the Water Council found, and as the record establishes, the site plan for the project incorporates both DES' "Proposed Operations To Avoid Take Of Endangered Species" and "Additional [Fish & Game] Recommendations/Conditions," and the site plan was made part of the permit approval. Based upon our review of the record, we conclude that the Water Council was not compelled to find that DES applied an incorrect legal standard when it issued the AoT permit in this case.

Lastly, the appellants contend that without a pre-permit study of the threatened or endangered species potentially affected by the project, the evidence in this case was necessarily insufficient to support DES' determination that the project complied with Rule 1503.19(h). However, as the Water Council observed, there was evidence in the record that, even without a pre-permit study, "DES and NH Fish and Game staff . . . were already familiar

with an ongoing study of [threatened or endangered species] on the Brox land near this site, had conducted a site visit, and [had] consulted with the applicant regarding the presence of [threatened or endangered species]." Based upon our review of the record, we uphold the Water Council's determination that DES had sufficient evidence to determine that the AoT permit at issue complied with Rule 1503.19(h).

<u>Affirmed</u>.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.


**Timothy A. Gudas,**
**Clerk**

4